IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 5, 2024

**STATE OF TENNESSEE v. JAMIEUM ALVIN REID**

**Appeal from the Circuit Court for Madison County**
No. 20-701-B        Donald H. Allen, Judge

_____

**No. W2023-00925-CCA-R3-CD**
_____

Defendant, Jamieum Alvin Reid, was indicted by a Madison County Grand Jury for possession of 0.5 grams or more of cocaine with intent to sell, possession of 0.5 grams or more of cocaine with intent to deliver, and possession of methamphetamine. Defendant pled guilty as charged and agreed to an effective eight-year sentence, with the manner of service to be determined by the trial court. The trial court sentenced Defendant to serve his sentence in confinement. Defendant appeals, arguing that the trial court abused its discretion in denying alternative sentencing because he was already approved by a community based program, and the State failed to present evidence that an alternative sentence was inappropriate. Following our review of the record, the briefs of the parties, and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Anna B. Cash, Jackson, Tennessee, for the appellant, Jamieum Alvin Reid.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Jody Pickens, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

On November 30, 2020, Defendant was indicted by a Madison County Grand Jury for possession of 0.5 grams or more of cocaine with intent to sell (count five), possession of 0.5 grams or more of cocaine with intent to deliver (count six), and possession of

methamphetamine (count seven).[1]  On April 30, 2023, Defendant pled guilty as charged. Pursuant to the plea agreement, counts five and six merged and Defendant agreed to an eight-year sentence as a Range I, standard offender and a $2,000 fine.  For count seven, Defendant agreed to a concurrent sentence of eleven months, twenty-nine days at seventy-five percent release eligibility and a $750 fine.  The manner of service was to be determined by the trial court.  The transcript of the plea submission hearing is not in the record, but the relevant facts underlying the plea, as provided in the presentence report ("PSR"), are as follows:

> On February 28, 2020[,] Investigators assigned to Jackson Madison County Metro Narcotics observed a tan vehicle . . . traveling south on North Highland following too close near the rear bumpers of several vehicles while switching lanes. . . . .  Upon initiating the traffic stop the front seat passenger jumped out the vehicle and ran leaving behind approximately 10.4 grams of marijuana, 8 suspected ecstasy pills and approximately 4.3 grams of suspected crack cocaine.  The passenger was shortly taken into custody and identified as [Defendant].

The trial court conducted the sentencing hearing over three separate dates.  Prior to the hearing, the State filed a notice of request for enhanced punishment based on Defendant's criminal record.  At the hearing on May 15, 2023, the State introduced the PSR which showed that Defendant's criminal history spanned from January 2002, when he was convicted of multiple counts of burglary, vandalism, and theft, through his most recent conviction, prior to the current case, for attempted assault by strangulation in April 2016 in Michigan.  In total, Defendant had eighteen felony convictions and twenty-two misdemeanor convictions.  Defendant reported that he dropped out of school after the tenth grade but later obtained his G.E.D. in 2002 while incarcerated, and he had been diagnosed with attention deficit hyperactivity disorder, split personality disorder, and schizophrenia.  Defendant reported that he began "using drugs at age seven, and alcohol at age 10" and had not received substance abuse treatment.  The validated risk and needs assessment resulted in a risk level of "high violent" with high needs in education and mental health, moderate needs in attitudes/behaviors, and low needs in employment, residential, friends, alcohol/drug use, family, and aggression.

Monique Houston, Defendant's wife, testified that she had been in a relationship with Defendant for a year and three months at the time of the hearing and had lived with him in Clarksville, Tennessee, throughout their relationship.  Until he was arrested, Defendant had not been working but was attending management courses because he

---

[1] Defendant was indicted in a seven count indictment along with a co-defendant.  Defendant was charged in counts five through seven.

wanted to open his own business. Defendant had been invited to "the Honor's Society because of his grades[.]" Ms. Houston explained that Defendant "had a hard life[,]" and his mother was his only support system until she passed away. She said that Defendant was in Jackson, Tennessee, on the date of his arrest to attend his mother's funeral, and Defendant "turned to drugs" to cope with his mother's passing. According to Ms. Houston, Defendant "ha[d] four personalities" and was "dyslexic[.]" Ms. Houston thought the Day Reporting Center ("DRC") would be beneficial to Defendant because it "would give him the structure [and motivation] he needs." Ms. Houston agreed that she and her family would help Defendant succeed in the DRC.

The State did not cross-examine Ms. Houston. However, the trial court clarified that Ms. Houston and Defendant began their relationship after the offense date in this case and that Ms. Houston had known Defendant for one year and eight months in total.

Defendant testified that he handled all of the arrangements when his mother passed away because his family was not around. Defendant turned to using drugs because he was "trying to find a way to ease the pain[,] but . . . knew it was wrong." When he met Ms. Houston and her son, he decided to "put everything away[.]" Defendant attended church with Ms. Houston and became involved with her son's life. He acknowledged that he was dyslexic and testified that he had four split personalities. Defendant recalled that he had never been offered a structured treatment program and thought the DRC program would work for him:

> [b]ecause it can give me the tools that I need to go back into the community and gradually get a better understanding of things. Instead of throwing me away, give me a chance that, you know, to get myself together. You know, get [Defendant] together and give me the right tools that I need that I can, you know, further go on in my life . . . .

Defendant recalled that he was ineligible for the Madison County DRC because of where he lived, but he "spent almost an hour and [fifty] something minutes on the phone" with Montgomery County DRC. The Montgomery County DRC conducted an assessment over the phone and accepted Defendant into the program if he were allowed by the court. The assessment and an email confirming Defendant's acceptance were admitted into evidence. The assessment showed a need for psychological and drug treatment. Defendant agreed that it was "time to quit all of this" because he wanted to become a productive citizen and good role model for Ms. Houston's son.

The State did not cross-examine Defendant. The trial court clarified that Defendant met Ms. Houston while on bond for this case and had lived with her since. Defendant also clarified that his mother passed away in August of 2020, but maintained that he had come

from Michigan to Jackson, Tennessee, for her funeral when he was arrested on these charges in February of 2020.

After the close of proof, Defendant argued that "until the mental health and the substance abuse issues are addressed and treated, this is going to be a lifetime cycle" and asked the court to "show mercy and allow him to enter the DRC program as opposed to serving the sentence." The trial court took the matter under advisement because it believed that the DRC program could not "accept someone who has a conviction for an aggravated assault" and requested the parties to obtain a certified copy of the judgment from Defendant's most recent conviction in Michigan.

On June 5, 2023, the trial court continued the sentencing hearing, and the State introduced a certified copy of the Michigan judgment as requested. Defendant also introduced a letter from the Montgomery County DRC stating that it was aware of the Michigan conviction, and that it did not disqualify Defendant from the program. The trial court reset the hearing for the next day to allow time to review this additional information.

The following day, the trial court stated that it had considered all evidence presented at the prior hearings, including the PSR and Defendant's statement. The trial court also considered "the principles of sentencing[,]" the arguments for alternative sentencing, "the nature and characteristic of the criminal conduct involved[,]" noting that the current offenses were "certainly serious offenses[,]" evidence of mitigating and enhancement factors, and statistical information for the offenses provided by the administrative office of the courts. The trial court noted that Defendant had posted bond, which was later revoked because Defendant had failed to appear in court in June 2022, and he was arrested in January 2023.[2]

The trial court applied and gave great weight to three enhancement factors: that Defendant had criminal history in addition to the convictions necessary to establish the appropriate range; Defendant's previous failure to comply with conditions of community release; and that the instant offense was committed while on community release. *See* T.C.A. § 40-35-114(1), (8), (13). Specifically, the trial court gave great weight to Defendant's criminal history, which included eighteen prior felony convictions and twenty-two prior misdemeanor offenses, which made him "at least a Range [II][,] multiple offender and could quite possibly be a Range [III][,] persistent offender." The trial court additionally found that based on the PSR, Defendant had criminal behavior involving drug use "since he was actually a teenager." The trial court also noted that "at least on four

---

[2] While the trial court noted that Defendant's bond was revoked for failure to appear, the record does not include an order revoking his bond in June 2022, or an arrest in January 2023. The record reflects that Defendant's bond had been revoked in March 2022, but was reinstated in April 2022.

different occasions . . . [Defendant had] gone out and committed new offenses while under release into the community." The trial also considered that Defendant had failed to appear for court in this case resulting in a revocation of his bond. Regarding enhancement factor 13, the trial court found that "at the time that [Defendant] committed these felony offenses . . . he was on what would appear to be parole out of the State of Michigan. I do give that great weight as well." *See* T.C.A. § 40-35-114(13).

The trial court found that "there's really not anything mitigating" but took into consideration Defendant's mental health, including his history of treatment. The trial court noted that Defendant's "work history is not very good[,]" that the "risk and needs assessment says he has a high risk of violence [and] a high risk of drug abuse as well." Ultimately, the trial court held:

> [a]fter considering all of this information that I've talked about and especially considering this long extensive criminal history that I've talked about, the [c]ourt finds that [Defendant] is not an appropriate candidate for alternative sentencing.
>
> The [c]ourt finds that measures less restrictive than confinement have frequently or recently been applied to [D]efendant without success. I say that because he was sentenced to serve felony sentences in Michigan, he got out and came back to Tennessee and committed more felony offenses while on release out of Michigan.
>
> The [c]ourt finds that any type of probation in this case would unduly depreciate the seriousness of these offenses especially in light of his long criminal history.
>
> You know, the [c]ourt considers the facts and circumstances, the previous actions of [D]efendant. His unwillingness to follow rules of probation or parole. Unwillingness to lead a productive life.
>
> I mean, he's basically resorted to criminal activity pretty much his entire adult life as best I can tell.
>
> So, the [c]ourt finds the interests of society in being protected from his future criminal conduct is great.
>
> . . .

I just don't find him to be a good candidate for the [DRC] in Clarksville. I just find that he needs to serve the sentence.

At the request of defense counsel, the trial court agreed to recommend that Defendant be considered for a drug treatment program while in the Tennessee Department of Correction ("TDOC").

After the trial court announced the sentence, Defendant explained that when he was incarcerated at eighteen years old, he "did more than [his] [release eligibility] date" because he tried to complete the drug treatment program, and that he had completed a one-year treatment program while incarcerated in Michigan. The trial court pointed out that Defendant's bond in this case had been revoked because he had a positive drug test and a second time because he failed to appear in court. Defendant stated that he started using drugs again after his release to cope with his mother's death because he did not have a support system. The trial court suggested for Defendant to "take advantage of whatever treatment programs" were available in TDOC. Defendant stated that he was trying to get help because "[t]here's more drugs in [TDOC] than on the street." The trial court expressed its concern that Defendant "would not report on a regular basis to treatment" based on his history.

Defendant filed a timely appeal, now properly before this court.

**Analysis**

Defendant argues that the trial court erred by denying him an alternative sentence because the State did not present evidence that an alternative sentence was inappropriate, and the trial court failed to properly consider his acceptance into the Montgomery County DRC. The State asserts that the trial court properly exercised its discretion in denying alternative sentencing. We agree with the State.

On appeal, the party challenging the sentence bears the burden of establishing that the sentence is improper. *State v. Branham*, 501 S.W.3d 577, 595 (Tenn. Crim. App. 2016). The "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *see State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010)). Here, the trial court properly considered the

evidence presented, the purposes and principles of sentencing, and explicitly stated on the record its reasoning for finding that confinement, rather than an alternative sentence, was appropriate.  Thus, the applicable standard of review is abuse of discretion with a presumption of reasonableness.

A defendant is eligible for alternative sentencing if the sentence imposed is ten years or less.  T.C.A. § 40-35-303(a).  However, an eligible defendant must establish suitability for alternative sentencing by demonstrating that it will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002); T.C.A. § 40-35-303(b).  Further, "a defendant is no longer presumed to be a favorable candidate for alternative sentencing" because the sentencing guidelines are merely "advisory[.]"  *State v. Johnson*, No. W2022-01041-CCA-R3-CD, 2023 WL 6545015, at *3 (Tenn. Crim. App. Oct. 9, 2023) (citing *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008)), *no perm. app. filed*; *see* T.C.A. § 40-35-102(6).

"A sentence is based upon 'the nature of the offense and the totality of the circumstances,' including a defendant's background." *State v. Clark*, No. E2022-00667-CCA-R3-CD, 2023 WL 6442974, at *4 (Tenn. Crim. App. Oct. 3, 2023) (quoting *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991)), *no perm. app. filed*.  A sentence of incarceration should reflect consideration of "[t]he potential or lack of potential for rehabilitation or treatment of the defendant," in addition to whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C).  When considering an alternative sentence, "the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public." *State v. Gregory*, No. M2023-00166-CCA-R3-CD, 2023 WL 8801163, at *4 (Tenn. Crim. App. Dec. 20, 2023) (quotations omitted) (quoting *State v. Cathey*, No. E2015-01284-CCA-R3-CD, 2016 WL 2641766, at *3 (Tenn. Crim. App. May 6, 2016)), *no perm. app. filed*; *see* T.C.A. § 40-35-210(b)(1)-(8) (sentencing considerations).

We note that the record does not contain a transcript from the guilty plea submission hearing. "When a record does not include a transcript of the hearing, this court should determine on a case-by-case basis whether the record is sufficient for a meaningful review." *State v. Baker*, No. E2022-00385-CCA-R3-CD, 2023 WL 569398, at *3 (Tenn. Crim. App. Jan. 27, 2023) (citing *Caudle*, 388 S.W.3d at 279), *perm. app. denied* (Tenn. June 8, 2023). Here, the record contains a sufficient recitation of the facts underlying Defendant's plea in both the PSR and the trial court's findings. Therefore, we determine that the record is sufficient to allow for meaningful appellate review of the trial court's sentencing decision. *See Caudle*, 388 S.W.3d at 279.

Defendant argues that "[w]ithout explicit evidence that [Defendant] could not successfully complete the [DRC] in Clarksville, the trial court should not have automatically determined that confinement was necessary. The State did not present any evidence that [Defendant] would not be a suitable candidate for alternative sentencing." First, it was not the State's burden to establish that Defendant was an *unsuitable* candidate for alternative sentencing; rather, it was Defendant's burden to establish that he was a *suitable* candidate. *See Johnson*, 2023 WL 6545015, at *3. Additionally, the trial court considered Defendant's acceptance to the Montgomery County DRC as one factor in the "necessary case-by-case analysis considering the nature of the offense and the totality of the circumstances . . . including [D]efendant's background." *See Gregory*, 2023 WL 8801163, at *4.

The record belies Defendant's assertion that the trial court "automatically determined that confinement was necessary." To the contrary, the record reflects that the trial court denied Defendant's request to report to the Montgomery County DRC after consideration of all the evidence presented at the sentencing hearings, including Defendant's criminal history, present physical and mental condition, and potential for rehabilitation. First, the trial court found that although Defendant pled as a Range I, standard offender, he would have been a Range II or even Range III offender, based on his criminal history which spanned "pretty much his entire adult life." *See* T.C.A. §§ 40-35-106, -107 (defining multiple and persistent offenders). The trial court also found that Defendant had previously been unable to comply with the terms of community release and that the current offenses were committed while Defendant was on community release for his Michigan conviction. The trial court also noted that Defendant's bond had been revoked twice in this case.

Additionally, the trial court considered the purposes and principles of sentencing. *See* T.C.A. §§ 40-35-210, -103(1). Specifically, the trial court considered that Defendant's validated risk and needs assessment resulted in a risk score of "high violent." The trial court also noted the serious nature and characteristics of these offenses which involved

possession of controlled substances. The trial court considered Defendant's acceptance to the Montgomery County DRC, and in fact, continued the sentencing hearing for Defendant to get additional proof of his eligibility for the DRC program in light of his aggravated assault conviction. The record is clear that the trial court considered Defendant's acceptance into the program and his criminal history before it determined that Defendant was not a good candidate for alternative sentencing.

Further, based on Defendant's extensive criminal history, including previous revocations of both parole and probation, the trial court found that incarceration was necessary to protect society and that less restrictive means had been unsuccessfully applied to Defendant. Based on the record, we conclude that the trial court did not abuse its discretion in sentencing Defendant to confinement. Defendant is not entitled to relief.

## Conclusion

For the foregoing reasons, we affirm the judgments of the trial court.

_____
JILL BARTEE AYERS, JUDGE